**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **RODOLFO MARTINEZ** | § | |
| | § | |
| **v.** | § | **A-11-CA-837 LY** |
| | § | |
| **TEXAS WORKFORCE COMMISSION-** | § | |
| **CIVIL RIGHTS DIVISION** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:     THE HONORABLE LEE YEAKEL
         UNITED STATES DISTRICT JUDGE

Before the Court are: Defendant's Second Motion for Partial Dismissal (Doc. No. 51) and Plaintiff's Response (Doc. No. 52). The District Court referred these Motions to the undersigned Magistrate Judge for report and recommendation.

Plaintiff Rodolfo Martinez ("Martinez"), sues the Civil Rights Division of the Texas Workforce Commission for the failure to promote him based upon his race and national origin — Mexican-American. Martinez alleges that he was denied a promotion in May of 2011 because of national origin disparate treatment discrimination. He further claims that he was denied promotions in November 2009 and May 2011 as a result of national origin disparate impact discrimination. He sues pursuant to Title VII of the Civil Rights Act of 1964. The District Court has already dismissed Martinez's claims brought pursuant to 42 U.S.C. § 1981. Martinez requests both compensatory and injunctive relief.

Defendant moves under Rule 12(b)(1) and 12(b)(6) to dismiss Martinez's claims asserting: (1) Martinez has failed to exhaust his administrative remedies with regard to the November 2009 failure to promote claim; (2) Martinez is improperly asserting theories outside the scope of his EEOC

charge; (3) Martinez asserts several theories which are not legally cognizable; and (4) Martinez failed to exhaust his administrative remedies with regard to his disparate impact claim.

## I.  FACTUAL BACKGROUND

Plaintiff Rodolfo Martinez ("Martinez"), a Mexican-American male, began his employment with the Texas Workforce Commission ("TWC") in June 2009. Plaintiff's First Amended Complaint at 4.  In November 2009, Martinez applied for a Lead Investigator position. Janet Quesnel, a non-Mexican-American female was chosen for the position. In his application process for the position, Martinez provided a portfolio of documents showing letters of recommendation, letters of commendation, and other information supporting his qualifications for the position.  *Id.* at p. 5. Martinez alleges that this portfolio never made it to the promotional file and that no other candidate that provided additional documentation had that documentation withheld from consideration. *Id.*

In May 2011, Martinez applied for a Manager position at TWC. Quesnel was again selected for this position. Martinez alleges that TWC's interview process is subjective in nature and the interviewers were allowed to score candidates in an unverifiable manner. *Id.* at 5. He alleges he did not receive the position because of his national origin.

Martinez generally complains that TWC has a pattern and practice of not promoting Mexican-Americans. He also alleges that TWC has a duty to develop and implement an affirmative action program and that it has not substantially complied with its duty to do so. *Id.* at 5-6.

## II.  MOTION TO DISMISS

Defendant the Texas Workforce Commission ("TWC") moves to dismiss Martinez's claims pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction and Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for relief.  A motion under Rule 12(b)(1) should be granted only if it appears beyond doubt that the plaintiff cannot prove a plausible set of facts in

support of its claim. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007)). The Court may find a plausible set of facts by considering: "(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Lane*, 529 F.3d at 557 (quoting *Barrera–Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)). The Court will accept all well-pleaded allegations in the complaint as true, and construe those allegations in the light most favorable to Plaintiff. *Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994). The party asserting jurisdiction bears the burden of proof when a 12(b)(1) motion to dismiss is filed. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *CleanCOALition v. TXU Power*, 536 F.3d 469, 473 (5th Cir. 2008) (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)).

Rule 12(b)(6) allows for dismissal of an action "for failure to state a claim upon which relief can be granted." While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, in order to avoid dismissal, the plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also, Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). A plaintiff's obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* In 2009, the Supreme Court expounded on the *Twombly* standard, explaining that a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a motion to dismiss, the Court must construe the complaint liberally and accept all of the plaintiff's factual allegations in the complaint as true. *See In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2009).

### III.   ANALYSIS

#### A.      Title VII Overview

Title VII prohibits discrimination against an employee on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e *et seq*. In the context of Title VII litigation, courts recognize two types of discrimination claims: disparate impact and disparate treatment. *Coleman v. Sch. Bd. of Richland Parish*, 418 F.3d 511, 520 (5th Cir. 2005). Discrimination claims premised on a disparate impact theory allege that employment practices that are facially neutral adversely and disproportionately affect a protected group. *Pacheco v. Mineta*, 448 F.3d 783, 787 (5th Cir. 2006). Disparate treatment claims challenge acts of discrimination in the terms or conditions of employment that are specific to the employee. *Coleman*, 418 F.3d at 520.

Before seeking judicial relief pursuant to Title VII, a prospective plaintiff claiming discrimination by an employer must exhaust his administrative remedies. *McClain v. Lufkin*, 519 F.3d 264, 272 (5th Cir. 2008), *cert. denied*, 555 U.S. 881; *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002). Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue. *Id.* (citing *Dao v. Auchan Hypermarket*, 96 F.3d 787, 788–89 (5th Cir. 1996)). Filing a complaint with the EEOC is required whether a person claims discrimination under a disparate treatment theory, a disparate impact theory, or both. *Id.* at 272 (discussing both). While EEOC complaints are construed liberally because Title VII was not

designed for the "sophisticated," *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 463 (5th Cir. 1970), "no issue will be the subject of a civil action until the EEOC has first had the opportunity to attempt to obtain voluntary compliance," *Pacheco*, 448 F.3d at 789 (quoting *Sanchez*, 431 F.2d at 467).

Filing an administrative claim "trigger[s] the investigatory and conciliatory procedures of the EEOC, in an attempt to achieve non-judicial resolution . . . ." *Id.* at 788–89. In deciding whether an EEOC charge has raised a particular claim, courts examine the charge by looking "slightly beyond its four corners, to its substance rather than its label." *Id.* at 789. A plaintiff is not required to "check a certain box or recite a specific incantation" to exhaust administrative remedies. *Id.* at 792. Instead, to determine what claims were administratively addressed, courts conduct a fact-intensive analysis into the scope of the EEOC investigation that can be expected to grow from the EEOC charge, and when a person raises a claim in court that could not have been anticipated to grow from his administrative charge, then dismissal of the claim for failure to exhaust is appropriate. *Id.*

**B.     Failure to Exhaust Administrative Remedies**

Martinez filed two EEOC charges. The first was filed on March 31, 2011, and the second on June 29, 2011. Copies of the charges are appended to the TWC's Second Partial Motion for Dismissal. In his first EEOC charge, Martinez states:

> PERSONAL HARM: I began my employment on June 22, 2009 in the position of Civil Rights Investigator II. Since December 1, 2009 and continuing I have been treated in a discriminatory manner because of being Spanish Speaking. On December 30, 2010, I was first informed that Management used my Portfolios for personal used [sic] and not include [sic] in the selection processed [sic].
>
> RESPONDENT'S REASON FOR ADVERSE ACTION: No reason was given.

DISCRIMINATION STATEMENT: I believe I have been discriminated against in violation of the Texas Commission on Human Rights Act, as amended, and Title VII of the civil Rights Act of 1964, as amended, because of my National Origin (Mexican-American).

Dkt. No. 51, Exhibit A. Martinez does not specifically identify an adverse employment action in this

charge, and further only relies on this charge to demonstrate exhaustion of a disparate impact claim.

Martinez's second charge, filed on June 29, 2011 charge states:

PERSONAL HARM: I began my employment on June 22, 2009 in the position of Civil Rights Investigator. During my employment I applied for Management positions in September 2009 (Job Posting 804831SR) and November 2009 (Job Posting 804889RK). On December 30, 2010 I learned that four (4) Portfolio documents were kept for personal used [sic] and submitted with selection package. On May 5, 2011, I learned that I was not selected for the Manager I-II position (Job Posting 805673SB).

RESPONDENT'S REASON FOR ADVERSE ACTION: No reason was given.

DISCRIMINATION STATEMENT: I believe I have been discriminated against in violation of the Texas Commission on Human Rights Act, as amended, and Title VII of the civil Rights Act of 1964, as amended, because of my National Origin (Mexican-American) and Race (Brown).

A.    I had more experience than the non-Mexican-American employee that was selected.

B.    The Portfolio documents submitted during the interviewed [sic] for Job Posting 894831SR and Job Posting 804889RK were return [sic] on December 30, 2010 and submitted with interview materials.

C.    Respondent fails to recruit National Origin (Mexican-Americans) to management positions.

D.    Selecting non-Mexican-American into management on a basis less favorable than that afforded to National Origin (Mexican-American) and Race (Brown).

E.    The guidelines selection for management positions are not validated and have an adverse adversely affect on National Origin (Mexican-American).

      F.     The total selection process leading to the final employment decision have a combined effect on National Origin (Mexican-American) and were unfair.

      G.     The Agency did not conduct a validity study on the adverse impact of its selection procedures on  National Origin (Mexican-American).

Dkt. No. 51, Exhibit B.  In his response to the motion to dismiss, Martinez contends that this second charge exhausted claims of both disparate treatment and disparate impact.

The TWC contends that neither of the two charges presented a complaint of disparate impact, and thus Martinez is barred from pursuing such a theory in this lawsuit.  In deciding this issue, the relevant question is whether the claims presented in the complaint could "reasonably be expected to grow out of the charge of discrimination" presented to the EEOC.  *Pacheco*, 448 F.3d at 789 (quotation omitted).  *Id.*  The elements of a disparate-impact claim are (1) a specific facially neutral policy; (2) that, in fact, has a disproportionately adverse effect on a protected class. *Hebert v. Monsanto*, 682 F.2d 1111, 1116 (5th Cir. 1982). Proof of discriminatory motive is not required for disparate-impact claims.  *Id.*  Thus, in order to have exhausted his administrative remedies, Martinez's charge must have identified a specific facially neutral test, requirement, or practice that has an adverse impact on Mexican-American employees.  In this regard, the Supreme Court has stated:

> It is not enough to simply allege that there is a disparate impact on workers, or point to a generalized policy that leads to such an impact. Rather, the employee is "responsible for isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities."

*Smith v. City of Jackson, Miss.*, 544 U.S. 228, 229-30 (2005) (*quoting Watson v. Fort Worth Bank and Trust*, 487 U.S. 977, 994 (1988) (citations omitted).

In determining whether Martinez exhausted his administrative remedies with regard to his disparate impact claims, the Court is guided by two Fifth Circuit decisions. In *Pacheco v. Mineta*, the Fifth Circuit addressed whether a plaintiff had administratively exhausted a disparate impact theory of discrimination in his EEOC charge. The plaintiff in *Pacheco* filed an administrative charge in which he complained that he failed to receive two promotions because of his race. 448 F.3d at 786. He also complained that his employer had a policy of selecting the "good old boy" for promotion. *Id.* In his complaint he alleged that his employer's "application and selection process" had a disparate impact on Hispanic employees because they were "disproportionately not selected for supervisory and management positions as compared to Anglo applicants." *Id.* at 786 n. 5. The district court dismissed the plaintiff's disparate-impact claim for failure to exhaust his administrative remedy and the Fifth Circuit affirmed. The district court's decision was appropriate, the Fifth Circuit reasoned, because the employee's administrative charge was "facially a disparate-treatment claim." *Id.* at 791. The court reached this conclusion because the employee complained of acts of intentional discrimination because of his race, and not of facially neutral policies. *Id.* at 792. Relying on several district and circuit court decisions, the panel noted that the plaintiff had failed "to identify any neutral employment policy that would form the basis of a disparate-impact claim." *Pacheco*, 448 F.3d at 792. The identification of such a policy is significant because it "is the cornerstone of any EEO disparate-impact investigation, since the EEO must evaluate both the policy's effects on protected classes and any business justifications for the policy." *Id.* Additionally, the disparate impact claim was "wholly conclusional" because he could not define how "the process operated so as to disadvantage Hispanics nor [did he] identif[y] any particular feature or aspect of the process which allegedly had such an effect on Hispanics generally or [plaintiff] in particular." *Id.* at 786 n. 5.; *also*

*see Gates v. Lyondell Petrochemical Co.*, 227 Fed. Appx. 409 (5th Cir.2007) (disparate impact claim could not be expected to grow out of EEOC charge where it alleged only disparate treatment towards plaintiff herself and failed to identify facially neutral employment policy).

On the other hand, two years later in *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 275 (5th Cir. 2008), the Fifth Circuit found that the plaintiff *had* exhausted his disparate impact claims based on allegations in his EEOC charge that he was constructively discharged, denied promotional and training opportunities and overloaded with work, and that defendants have "similarly discriminated against other black African Americans." *Id.* Notably, the court provided no analysis to support this conclusion, in all likelihood because the defendant had not challenged whether the plaintiff had exhausted his "neutral, company policy" claim in the trial court. *Id.*

It is a very close call whether Martinez has exhausted his administrative remedies with regard to his disparate impact claim. First, to the extent that Martinez contends he raised a disparate impact claim in his first EEOC charge, he is mistaken. This charge fails to identify any facially neutral policy and only complains about disparate treatment – notwithstanding the fact that Martinez seems to have abandoned any disparate treatment claims based upon this charge. The second charge, though less than a model of how a disparate impact claim should be raised, does better. Like the first charge, the initial portion of the second charge complains about promotions that Martinez failed to receive. Like the plaintiff in *Pacheco*, here Martinez is clearly making a disparate treatment claim. Additionally, some of the employment practices that Martinez identifies are not facially neutral—*e.g.*, failing to recruit Mexican-Americans, or selecting Mexican-Americans into management positions on a basis that is "less favorable" than non-Mexican-Americans. Other statements are at best vague—for example, the assertion that the selection processes leading to the

9

final employment decision "have a combined effect on [ ] Mexican-Americans and were unfair," does not identify a specific test, requirement, or practice. On the other hand, the second charge does contain the complaint that the "guidelines selection for management positions. . . have an adverse adversely [sic] affect on National Origin (Mexican American)." Coupled with the statement that "the Agency did not conduct a validity study on the adverse impact of its selection procedures on [Mexican-Americans]," this statement would appear to be a complaint that identifies a facially neutral "practice" that allegedly has an adverse impact on Mexican-American employees.

Having said this, the Court notes that Martinez's First Amended Complaint attempts to raise a broader disparate impact claim than just this. Of the many disparate impact claims asserted in the First Amended Complaint, the only claim that would reasonably be expected to follow from what is stated in the charge is the claim that the TWC's scoring system used in the promotional rating process has a disparate impact on Mexican-Americans. *See* First Amended Complaint at p. 3. All of the other disparate impact claims—those regarding employee recruitment, use of different standards in granting promotions, subjective criteria in giving promotions, the assignment to Mexican-Americans of non-competitive duties, and failure to develop and implement an affirmative action program—are either disparate treatment claims, or fall outside the scope of the second EEOC charge and have not been exhausted. Thus, the Court recommends that the District Judge grant the motion to dismiss as to all disparate impact claims *except* the claim that TWC's scoring system used in the promotional rating process has a disparate impact on Mexican-Americans.

C.      Timeliness of Charges

Martinez complains in this case of several separate hiring decisions:  a September 2009 hiring decision,[1] a November 2009 decision, and a May 2011 decision.  The TWC contends that Martinez failed to file a timely EEOC charge on the first two of these decisions, and thus any complaint regarding those failures to promote Martinez are time-barred.  In general, an EEOC charge must be filed within 300 days from the date the unlawful employment practice complained about occurred.  *Harris v. State Farm Fire & Cas. Co.*, 178 F.Supp.2d 680, 689 (W.D. La. 2001) (*citing* 42 U.S.C. § 2000e–5(e)(1); 29 U.S.C. § 626(d)).  "Filing a timely charge is a prerequisite to having an actionable claim."  *Stewart v. Mississippi Transp.  Com'n*, 586 F.3d 321, 328 (5th Cir. 2009).  Thus, any claims arising more than 300 days prior to the filing of an EEOC charge are time-barred.  42 U.S.C. § 2000e–5(e)(1).

Martinez filed his EEOC charges on March 31, 2011, and June 29, 2011.  Three hundred days prior to these dates is June 4, 2010, and September 2, 2010, respectively.  Thus, Martinez's claims that he was not promoted in September and November 2009 for discriminatory reasons are time-barred.[2]   42 U.S.C. § 2000e–5(e)(1); *Stewart*, 586 F.3d at 328.   Martinez tries to escape this

---

[1]Martinez appears to have dropped any claims regarding the September 2009 decision. Regardless, for the reasons set out in the text, this claim is time-barred.

[2] In his earliest charge, in an apparent attempt to justify the untimely charge, Martinez states that he did not learn until December 30, 2010, that his portfolios were not used by management in certain unidentified hiring decisions.  There are several problems with this.  First, the failure to use his portfolios in the decision making process does not qualify as an adverse employment action upon which Martinez can base a Title VII discrimination claim. Ultimate employment decisions include discharges, demotions, denial of pay increases, and failure to promote. *Hernandez v. Crawford Bldg. Material Co.*, 321 F.3d 528 (5th Cir. 2003).  Additionally, the charge filing period commences at the time the hiring decision is made and communicated to plaintiff, and not some later date.  *Delaware State College v. Ricks*, 449 U.S. 250, 258 (1980).

11

conclusion by contending that he can rely on his first EEOC charge to assert a disparate impact claim on earlier hiring decisions, and possibly a disparate treatment claim, based upon a continuing violation theory. Alternatively, Martinez contends that the second EEOC charge raised a disparate treatment claim on the May 2011 hiring decision, as well as a general disparate impact claim.

The continuing violation doctrine is an equitable exception that "extends the limitations period on otherwise time barred claims only when the unlawful employment practice manifests itself over time, rather than as a series of discrete acts." *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 279 (5th Cir. 2004). In order to extend the statute of limitations period under the continuing violation theory, a plaintiff must file an EEOC charge within at least 300 days of one of the alleged acts of discrimination. *Waltman v. International Paper Co.*, 875 F.2d 468, 474 (5th Cir. 1989). The second charge, filed in June 2011, meets this criterion with regard to the May 2011 promotion decision.

The Supreme Court has held that discrete discriminatory acts constitute separate, actionable instances of unlawful discrimination such that the continuing violation theory is inapplicable. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). Moreover, in general, the continuing violation doctrine "is limited to hostile environment claims." *Lee v. City of Corpus Christi*, 749 F.Supp.2d 521, 531 (S.D. Tex. 2010); *Bashiri v. Alamo Cmty. Coll. Dist.*, No. SA–07–cv–1028, 2009 WL 2998228, at *2 (W.D.Tex. Sept. 16, 2009) ("[T]he continuing violation doctrine is applicable only to hostile work environment claims."). The applicability of the doctrine to other types of claims in this circuit is questionable. *See Moini v. Univ. of Tex. at Austin*, No. A–10–CA–180–SS, 2011 WL 90472, at *7–8 (W.D. Tex. Jan. 10, 2011) (stating that *Morgan* divided Title VII claims into three separate categories: (1) those based on discrete acts; (2) those based on hostile work environment; and (3) those based on pattern-or-practice). Furthermore, "[a]

12

pattern or practice of refusing to hire job applicants does not constitute a continuing violation."
*EEOC v. Freeman*, No. 09 Civ. 2573, 2010 WL 1728847, at *6 (D. Md. Apr. 27, 2010)). This is
because "[t]he refusal to hire an applicant . . . is undoubtedly a discrete act of discrimination." *Id.*

      Further, in the wake of *Morgan*, courts have generally declined to apply the continuing
violation theory in the disparate impact context.  In a 2012 decision, the Second Circuit summarized
the law on this point:

> [d]iscrete acts of this sort, which fall outside the limitations period, cannot be brought
> within it, even when undertaken pursuant to a general policy that results in other
> discrete acts occurring within the limitations period. This is the conclusion of every
> circuit to consider the question after *Morgan*.

*Chin v. Port Authority of New York & New Jersey*, 685 F.3d 135 (2nd Cir. 2012).  To prevail on a
disparate impact claim, the statute requires that a plaintiff "demonstrate[ ] that a respondent uses a
particular employment practice that causes a disparate impact." 42 U.S.C. § 2000e–2(k)(1)(A)(i).
In *Lewis v. City of Chicago*, 560 U.S. 205 (2010), the Supreme Court interpreted this language to
mean that every "use" of an employment practice that causes a disparate impact is a separate
actionable violation of Title VII with its own 180 or 300 day statute-of-limitations clock.  In the
absence of a hostile work environment claim, and because the failure to promote Martinez in 2011
was a discrete act, the continuing violation theory does not apply to either Martinez's disparate
treatment or disparate impact claims. Under *Lewis* and *Morgan*, each time the TWC failed to
promote Martinez, he had 300 days to challenge the decision. Thus, the Court should decline to
consider any claim under any theory based on an employment decision that occurred before June 4,
2010.  This limits Martinez to claims surrounding the May 2011 failure to promote him.

### III.  SUMMARY OF CONCLUSIONS

In summary, the Court finds that Martinez may only bring two claims: (1) a disparate impact claim based on the scoring processes utilized by the TWC in the promotional selection rating process, and only with regard to the May 2011 hiring decision; and (2) a disparate treatment claim with regard to the May 2011 hiring decision.  All other claims brought in the First Amended Complaint should be dismissed.

### IV.  RECOMMENDATION

The undersigned Magistrate Judge **RECOMMENDS** that the District Court **GRANT IN PART** Defendant's Motion for Partial Dismissal (Clerk's Doc. No. 4) and **DISMISS WITH PREJUDICE** Martinez's disparate treatment claim with the exception of his claim regarding the TWC's failure to promote him in May 2011 and **DISMISS WITH PREJUDICE** his disparate impact claims with the exception of his claim that the TWC's scoring processes used in the promotional selection rating process for the May 2011 job had a disparate impact on Mexican-Americans.

### V.  WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and

recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 24th day of September, 2013.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE