**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **RODOLFO MARTINEZ** | § | |
| | § | |
| **v.** | § | **A-11-CA-837 LY** |
| | § | |
| **TEXAS WORKFORCE COMMISSION-** | § | |
| **CIVIL RIGHTS DIVISION** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:    THE HONORABLE LEE YEAKEL
        UNITED STATES DISTRICT JUDGE

Before the Court are: Defendant's Motion for Summary Judgment (Dkt. No. 69); Plaintiff's Response (Dkt. No. 73); Defendant's Objections to Plaintiff's Response (Dkt. No. 74); Defendant's Reply to Plaintiff's Response (Dkt. No. 75); and Martinez's Response in Opposition to TWC's Objections (Dkt. No. 76). The District Court referred these Motions to the undersigned Magistrate Judge for report and recommendation.

Plaintiff Rodolfo Martinez ("Martinez"), sues the Civil Rights Division of the Texas Workforce Commission ("TWC") for the failure to promote him based upon his national origin — Mexican-American. Martinez alleges that he was denied a promotion in May of 2011 because of national origin disparate treatment discrimination. He sues pursuant to Title VII of the Civil Rights Act of 1964. The District Court has already dismissed all claims Martinez has brought in this suit with the exception of his claim that the TWC engaged in illegal national origin/race discrimination when it selected a non-Hispanic employee, Janet Quesnel, instead of Martinez for promotion to a manager position in May of 2011. Martinez's Response (Dkt. No. 69) at p. 1.

Defendant moves for summary judgment asserting that Martinez's failure to promote claim fails because: 1) TWC has articulated a legitimate non-discriminatory reason for its failure to

promote Martinez; and 2) that Martinez cannot establish pretext or a discriminatory motivating factor for the failure to promote him.

## I.  FACTUAL BACKGROUND

Plaintiff Rodolfo Martinez ("Martinez"), a Mexican-American male, began his employment with the Texas Workforce Commission ("TWC") in June 2009 as an Investigator II investigating employment discrimination. Defendant's Exs. 9 and  2 at 123.  Martinez was hired by Robert Gomez, the Director of the TWC's Civil Rights Division ("CRD"), at least in part for his ability to speak Spanish. Defendant's Ex. 2 at 117-118. Gomez is Hispanic, and of Mexican-American origin. Defendant's Ex. 5 at 5-6.  Effective December 1, 2009, six months after his initial employment with the TWC, Martinez was promoted to a position as Investigator III in the area of housing discrimination. Defendant's Ex. 10.

Prior to his employment with the TWC, in his first application to the TWC, Martinez listed his last position as a "custom taylor [sic]" with Dillard's Department store, where he worked from 2004-2009. Defendant's Ex. 11.  Prior to that, he was employed at the Tuxedo Exchange as a clothing retail store manager from 2000-2004. *Id.* Prior to his employment with the Tuxedo Exchange, Martinez's application states that from 1990-1997 he was an Enforcement Supervisor with the EEOC supervising nine employees.  *Id.* He also stated he was employed with the EEOC as an Equal Opportunity Specialist from 1979 to 1990, and supervised no employees. *Id.*

In September of 2009, TWC CRD Director Robert Gomez sent an e-mail to TWC employees, including Martinez, inviting them to apply for the position of Investigator VI. Defendant's Ex. 21. This position was posted "internally" only and was not available to applicants outside the agency. Eight people applied for the position, including Martinez. Defendant's Ex. 8; Defendant's Ex. 4 at 24.  At the time he submitted his application, Martinez had worked for the TWC approximately three

2

months as an Investigator II. Gomez did not select Martinez for the Investigator VI position. Instead, he selected Janet Quesnel, an Anglo woman over forty years of age, for the position. Quesnel had worked for the TWC since June of 1994 and worked her way up from Clerk III, to Investigator II, to Investigator III to Investigator V. Defendant's Ex. 25.  Also, prior to her selection for the Investigator VI job, Quesnel was assigned as the interim team lead in August of 2009, where she functioned as a supervisor until the Investigator VI job was filled. Defendant's Ex. 5.

Robert Gomez was the hiring decisionmaker for the Investigator VI position. *Id.* He worked with the TWC's Human Resources department about what to include in the job vacancy notices. *Id.* Tony Robertson, TWC Manager II also worked with TWC Human Resources to help determine the Investigator VI job description, summary, and preferred qualifications. Defendant's Ex. 6. Gomez and Robertson created interview questions and submitted them to Human Resources. Defendant's Ex. 5. They created seventeen interview questions. Defendant's Ex. 30.  The interview questions tested the applicant's knowledge of the law, the work of the TWC, and asked applicants to give examples of how they would react in certain situations and/or their management philosophies. *Id.* Gomez and Robertson conducted the interviews of the candidates.  They each wrote out the answers of each candidate on a form and then gave each candidate a numerical score based on each response. Defendant's Exs. 30-33. The scores were compiled into a scoring matrix and Quesnel was determined to have the highest score of 197. Defendant's Ex. 29.  The second highest scoring candidate was David Trinidad, an Hispanic male.  *Id.*   Martinez was the lowest scoring candidate. Defendant's Ex. 29. On October 9, 2009, Gomez announced that Quesnel had received the job. Defendant's Ex. 35.

Tony Robertson left TWC in December of 2010, creating a vacancy. Defendant's Ex. 6. On February 8, 2011, a vacancy notice was posted internally and externally for the Manager I-II position.

Defendant's Ex. 36. New CRD Director Jonathan Babiak e-mailed employees encouraging all who were interested to apply. Defendant's Ex. 37. In accordance with the TWC's hiring and selection procedures, Babiak created a set of interview questions, along with preferred responses, and submitted them to Human Resources for review.  Defendant's Ex. 4. Several people applied, along with Martinez and Quesnel. Defendant's Exs. 38-40.[1]

On April 13, 2011, Babiak and Vickie Covington, who is African-American, interviewed applicants for the Manager position. The interview consisted of fifteen identical job-related questions that were asked to all applicants. Defendant's Exs. 44 and 45. After the interviews were completed, Babiak and Covington allotted points to each answer and placed the scores on an individual scoring matrix. Defendant's Exs. 42-43, 50-51. The scores were ultimately compiled in a selection matrix that included all the candidates, their scores, and ranks.  Defendant's Ex. 74. Both Covington and Babiak gave Quesnel a score of 94. Babiak gave Martinez a 74 and Covington gave him a score of 40. Defendant's Exs. 50-51.  Quesnel was selected for the job on April 28, 2011. Defendant's Ex. 41. Martinez was notified of his non-selection on May 3, 2011. Defendant's Ex. 53. Martinez filed a grievance on May 13, 2011, claiming that the interview process was subjective and that the TWC used discriminatory practices against Mexican-Americans. Defendant's Ex. 54. Martinez filed a Charge of Discrimination with  the EEOC on April 5, 2011. Defendant's Ex. 15.  He filed another

---

[1]Despite directions to "include ALL employment" Martinez's job application differed from the one he submitted for the Investigator VI position.  In the new application he omitted his positions with Dillard's and the Tuxedo Exchange and added a new position as an Investigator of Regulation Compliance with the State of Wisconsin from 1997-1999. Defendant's Ex. 39.  The TWC has submitted summary judgment evidence that Martinez was terminated from this position on September 9, 1998, which Martinez also failed to disclose. Defendant's Ex. 69.

Charge on June 29, 2011, Defendant's Ex. 16. He also filed a third Charge, which is not the subject of this litigation, on March 15, 2013. Defendant's Ex. 17.[2]

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c)*; Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323 (1986). A court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990). The moving party bears the burden of establishing that there are no genuine issues of material fact. If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *Id.* The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *Celotex*, 477 U.S. at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue exists for trial. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1996).

---

[2]Martinez has a history of litigation in the employment context. He sued the EEOC in 1980 alleging race discrimination, which ultimately led to a trial, at which he lost. Defendant's Ex. 3. In 2007 Martinez alleged that Dillard's failed to promote him based upon his age.  Defendant's Ex. 57. That case was settled.  Defendant's Ex. 58. In 2007, Martinez filed an employment discrimination complaint against the Department of Homeland Security, bringing a failure to hire claim based upon age. Defendant's Ex. 19.  He sued and summary judgment was awarded to the Department of Homeland Security. Defendant's Ex. 55. Martinez also filed an EEOC Charge against the City of Austin in November of 2011 alleging national origin discrimination for failure to hire.  Defendant's Ex. 20.

In an employment discrimination case, the Court must "focus on whether a genuine issue exists as to whether the defendant intentionally discriminated against the plaintiff." *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 447–48 (5th Cir. 1996). The Court "must draw all reasonable inferences in favor of the nonmoving party, and [the Court] may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000). "[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden in a motion for summary judgment." *Jordan v. Cleco Corp.*, 2013 WL 673438 (W.D. La. Feb. 22, 2013) (citing *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002)).

## III. EVIDENTIARY OBJECTIONS

The TWC objects to much of Martinez's summary judgment evidence and has filed its Objections to Plaintiff's Response to Defendant's Motion for Summary Judgment (Dkt. No. 74). Generally, TWC objects to various exhibits as irrelevant, outside the relevant time period, misstating the law or facts, or not supportive of Martinez's claims. TWC requests that the Court strike these exhibits. The Court need not address the TWC's objections because even if this evidence were considered, it would not affect the Court's decision. Accordingly, Defendant's Objections to Plaintiff's Response to Defendant's Motion for Summary Judgment (Dkt. No. 74) are DENIED AS MOOT.

## IV. ANALYSIS

Title VII prohibits discrimination against an employee on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e *et seq.* For cases of discrimination based on circumstantial evidence, such as this, the court applies the *McDonnell Douglas* burden-shifting analysis. *See Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 316–17 (5th Cir. 2004) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824 (1973)). "A plaintiff relying on

circumstantial evidence must put forth a prima facie case, at which point the burden shifts to the employer to provide a legitimate, non-discriminatory reason for the employment decision." *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007) (citations omitted); *Davis*, 383 F.3d 309, 316–17. If the employer successfully articulates a legitimate, nondiscriminatory reason for its decision, the burden returns to the plaintiff to offer evidence that the reason given by the employer is merely pretext for unlawful discrimination or that the employer's reason is only one of the motivating factors for the employer's reason and that another motivating factor is plaintiffs protected characteristic. *McDonnell Douglas*, 411 U.S. at 804–05; *Autry v. Fort Bend Independent School Dist.*, 704 F.3d 344, 346–47 (5th Cir. 2013) (citing *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011)).

### A.      Prima Facie Case

To establish a prima facie case of race and/or national origin discrimination based on a failure to promote, the plaintiff must demonstrate: (1) that the employee is a member of a protected class; (2) that he sought and was qualified for the position; (3) that he was rejected for the position; and (4) that the employer continued to seek or promoted applicants with the plaintiffs qualifications. *See Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 354–55 (5th Cir. 2001) (citing *Haynes v. Pennzoil Co.*, 207 F.3d 296, 300 (5th Cir. 2000)). The parties do not dispute that Martinez has made out a prima facie case.

### B.      Legitimate Non-Discriminatory Reason

The TWC proffers as its legitimate nondiscriminatory reason for not promoting Martinez that Quesnel was the most qualified applicant. "An employer's choosing the best-qualified candidate 'constitutes a legitimate, nondiscriminatory justification for its failure to promote [an employee].'"

*Caldwell v. Univ. of Houston Sys.*, 520 F. App'x 289, 294 (5th Cir. 2013) (quoting *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 881–82 (5th Cir. 2003)).

## C.    Pretext

The propriety of summary judgment turns, then, on whether Martinez has met his burden of producing admissible evidence sufficient for a jury to conclude that the TWC's proffered justification was pretext for racial discrimination. *See Laxton v. Gap, Inc.*, 333 F.3d 572, 578–79 (5th Cir. 2003). Pretext may be exposed "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010). A claimant's prima facie case, combined with sufficient proof that the employer's proffered justification is false, may permit the trier of fact to determine that the employment decision was motivated by discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000). However, there will also be cases where no reasonable jury could conclude that the employment action was discriminatory in nature, notwithstanding the plaintiff's showing of a prima facie case and sufficient evidence to negate the defendant's justification. *Id.* "The ultimate question is whether the employer intentionally discriminated, and proof that 'the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason . . . is correct.' " *Id.* at 146–47. [3]

---

[3]A plaintiff may also avoid summary judgment on a Title VII claim by presenting sufficient evidence for a reasonable jury to conclude that race or national origin was a motivating factor for the failure to promote. *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004), *invalidated in part, Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009) (precluding mixed-motive analysis in ADEA cases); *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101–02 (2003). Martinez does not attempt to make a mixed-motive showing in this case.

Martinez makes several arguments attempting to show that the TWC's claim that Quesnel was the better qualified applicant is not true, and in fact is a pretext. The Court will address each of these arguments in the following sections.

### 1.    Better Qualified

First, Martinez attempts to meet his pretext burden by showing that he was clearly better qualified than Quesnel. To be successful, Martinez must present admissible evidence that would allow a jury to conclude that "no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Moss v. BMC Software, Inc.*, 610 F.3d 917, 923 (5th Cir. 2010) (citations and internal quotation marks omitted). The bar is high because "[u]nless the qualifications are so widely disparate that no reasonable employer would have made the same decision . . . differences in qualification are generally not probative evidence of discrimination." *Id.* (quoting *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 347 (5th Cir. 2001) (internal quotation marks omitted)). Ultimately, Martinez has not submitted evidence from which a rational jury could conclude that Quesnel's and Martinez's qualifications were "so widely disparate" to be probative evidence of discrimination.

Martinez argues that he was better qualified for the May 2011 position because: 1) he had five times more relevant supervisory experience than Quesnel; 2) Martinez's supervisory experience was at a "higher level"; 3) that Martinez had more years investigating employment discrimination complaints; and 4) that Martinez had more education than Quesnel.

Depending upon which TWC application the Court reviews, as Martinez submitted three applications to the TWC, each listing different work experience,[4] the summary judgment evidence

---

[4] Defendant's Exs. 11, 26 and 39.

is that Martinez reported on his application for the Manager position that he had supervisory experience with the EEOC from 1990 to 1997. Defendant's Ex. 39. He also reported that he was employed as an "Enforcement Supervisor" with the EEOC. *Id.* Martinez asserts that he has nineteen years of investigating employment discrimination complaints. *Id.* Martinez also stated on his application that he had two years of technical school at Milwaukee Area Technical College and two years of Federal Government Training. *Id.* At the time of his application, Martinez had worked at the TWC for approximately eighteen months.

At the time of her promotion to Manager, Quesnel had worked for the TWC continuously since June of 1994, seventeen years, had thirty years of state experience, and had been consistently promoted at the TWC. Defendant's Ex. 38. Quesnel had worked as both an Investigator II and Investigator III – the only two jobs held by Martinez at the TWC prior to his Manager application. *Id.* Quesnel had been promoted out of the Investigator III position several years before in April of 2003, and worked as an Investigator V, Employment Specialist V and Lead Civil Rights Investigator/Supervisor. *Id.* Quesnel was employed in a managerial capacity at the time of her promotion.

The Court finds that the totality of the circumstances do not show that Martinez was clearly better qualified than Quesnel. Martinez had been employed with the TWC for less than two years when he applied for the Manager position and had not held any management position at the TWC. While Martinez had prior management experience with the EEOC and more management experience than Quesnel, that experience was well over a decade old at the time of his application, as Martinez had not worked in the civil rights arena for a period of twelve years while he worked as a tailor and in retail. Defendant's Ex. 11. Additionally, the Fifth Circuit has held that years of experience alone

10

do not equate to clearly superior qualifications. *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 959 (5th Cir. 1993).  Moreover, Martinez's EEOC investigative experience was similarly stale, and he had only been performing investigations with the TWC for less than two years. Quesnel had been employed with the TWC for seventeen years and had consistently been promoted to positions of greater responsibility.  Martinez would have leapt over several positions if he were given the Manager position.

Martinez asserts that he has more educational experience that Quesnel, but although Martinez attended some technical college, he holds no college degree of any type and substituted federal training he received while employed by the EEOC more than thirteen years in the past. Quesnel also received continuing training while employed at the TWC.  Defendant's Ex. 25. The Court finds that the summary judgment evidence shows that the candidates' qualifications were not  so widely disparate that no reasonable employer would have made the same decision. *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 347 (5th Cir. 2001). Both had several years of investigatory experience, Martinez might have had more managerial experience, but Quesnel's overall experience was much more recent and actually with the TWC.  Martinez has failed to show that he was "clearly better qualified" and that the disparities in qualifications between him and Quesnel were of "such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen [Quesnel] over [Martinez] for the job in question." *Bright v. GB Bioscience Inc.*, 305 Fed.Appx. 197, 205 n. 8 (5th Cir. 2008). Thus there is no fact issue to be sent to the jury.

### 2.    TWC Failed to Follow It's Own Policies

Martinez also alleges that the TWC failed to follow its own policies, which allowed Quesnel to be promoted over Martinez. First, Martinez asserts that Quesnel falsified the information on her

application and according to TWC policies she should have been disqualified from consideration on this basis based upon 2.3.7 (C) of the TWC's Personnel Manual.  Plaintiff's Ex. 11. Martinez also asserts that Quesnel improperly obtained selection materials prior to the selection process. Lastly, Martinez asserts that Quesnel should not have been eligible to apply for the position because she was already performing the Manager position in an interim capacity.   "A company's failure to follow internal procedures is generally not enough to create a genuine issue of material fact as to discriminatory motives." *Grubbs v. Southwest Airlines*, 296 F. App'x 383, 390 (5th Cir. 2008).

Martinez alleges that Quesnel misstated her job title and length of supervisory experience on her Manager application. Specifically, he claims Quesnel worked as an Investigator V while she stated she was an Employment Specialist V. Defendant's Exs. 34 and 38. Martinez also asserts that Quesnel inaccurately stated that she had supervisory duties from September 2008 until the time she applied for the Manager position, when she only had supervisory duties for part of that time. Defendant's Ex. 38; Defendant's Ex. 7 at pp. 31-33.

The TWC responds that Martinez blatantly falsified his application for the Manager position and falsified various other applications to TWC. Specifically, the TWC points out that Martinez failed to list a job with the State of Wisconsin's Department of Health Services that he began in October of 1997 in his earlier applications, but then listed the job in his application for Manager. Defendant's Exs. 11, 26, and 39  Additionally, once he did list the job he claimed that his specific reason for leaving was to "move out of state" when he was in fact terminated.  Defendant's Exs. 39, 68. Also, the TWC contends that Martinez omitted various positions from his applications despite the direction to "Include ALL employment.  Begin with your current or last position and work back

from your first." Defendant's Ex. 11. The TWC asserts that Martinez was not disqualified on this basis and that its failure to disqualify Quesnel is not evidence of pretext.

These assertions fail to demonstrate pretext.  It is true that a violation of internal policies, depending on, *inter alia*, the nature of the internal policy and the extent of the deviation in the particular case, could give rise to evidence of pretext in light of all the other relevant facts. *See, e.g., Machinchick v. PB Power, Inc.*, 398 F.3d 345, 355 (5th Cir. 2005). However, with regard to the assertion that Quesnel misrepresented her supervisory experience and job title, her alleged inaccuracies all related to her work at the TWC, which had records of her actual work experience, and the inaccuracies were de minimus.  Although Quesnel marked the "supervisory/managerial" box for the entire term of both of her most recent positions, the summary judgment evidence is that she did perform at least some supervisory or managerial duties.  Defendants Ex. 7 at  31.  Quesnel clarified in the body of her application that she was performing supervisory functions during the absence of her supervisor and on an interim basis until the relevant positions were filled.  Martinez's claim that Quesnel falsified her application regarding these two positions is not supported by the evidence.  Moreover, Martinez fails to show that Quesnel benefitted from the TWC's failure to strictly apply its policy, insofar as Martinez's application would also have been disqualified.

With regard to his contention that  Quesnel improperly obtained selection materials prior to the selection process, and was not disqualified for this as required by TWC policy, Martinez has offered no evidence of this outside his subjective belief that this occurred.  He offers in support the fact that Quesnel's answers to the interview questions closely track the preferred answers. Response at p. 13. He speculates that because Quesnel was a friend of Becky Smith, who worked in Human Resources, Smith gave Quesnel the answers prior to the interview. Quesnel testified in her deposition

that Smith gave her no assistance with the job process. Defendant's Ex. 7 at p. 53. Martinez offers

no other evidence that this alleged sharing occurred. "Conclusory allegations, speculation, and

unsubstantiated assertions are inadequate to satisfy the nonmovant's burden in a motion for summary

judgment." *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002). Without more than his

subjective belief that Quesnel "cheated" on the interview, and without evidence that TWC knew

about this irregularity and supported it, Martinez's evidence fails to show discriminatory intent.

Lastly, Martinez asserts that TWC failed to follow its own policies when it allowed Quesnel

to apply for the Manager position. He alleges that TWC Policy would have provided that Quesnel

could not apply for the Manager position as she was acting in an interim capacity since January of

2011, and that no emergency existed requiring an interim placement. In support of this, Martinez

cites to Plaintiff's Ex. 1 at 21-24, which in turn cites to the relevant policy, which reads:

> **2.2.7 Temporary Assignment**
>
> To facilitate the work of the agency during emergencies or other special
> circumstances, TWC may temporarily assign any classified employee to another
> classified position or an exempt employee to another exempt position to perform
> duties not associated with the position classification. This period of temporary
> assignment may not exceed six months, and during that time the employee receives
> the appropriate rate of pay. An employee may not be assigned to temporary duties for
> more than six months during a twelve month period. During a temporary assignment,
> the employee may not receive a merit increase, promotion, demotion, or salary
> reduction.

First, the Court notes that there is no clarification in this policy of what constitutes an "emergency"

or "special circumstances. " Additionally, this policy relates to an employee being temporarily

assigned to another position to "perform duties not associated with the position classification."

There is no evidence that the particular scenario described in this policy occurred in this case or that

this policy is even applicable. This argument appears to be a red herring. Martinez has failed to

14

carry his burden and this evidence is insufficient to create a create a fact issue with regard to TWC's discriminatory intent.

### 3.     TWC Misrepresented the Reasons it Selected Quesnel

In his next effort to show pretext, Martinez relies upon various after-the-fact statements in support of his contention that the TWC lied about the reasons it promoted Quesnel over him and tried to "cover up the selection process."  Response at p. 10. At the summary judgment stage, Plaintiff's burden is not to persuade the Court that Defendant's explanation is incorrect but, rather, to raise a genuine issue of material fact for trial by "presenting evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'"  *Reeves*, 530 U.S. at 143.

To attempt to meet this standard, Martinez first points to the Memorandum that Jonathan Babiak sent to Human Resources to justify requesting a higher salary for Quesnel and to offer the position to Quesnel as a Manager II position.  Defendant's Ex. 41. Babiak states Quesnel is the "top candidate" and offers his justification for paying a higher salary.  He includes in this her years of experience, her career path, and that "based upon her application and her interview, Ms. Quesnel has demonstrated superior experience and ability to manage staff and business processes to ensure quality customer service, fair administration of investigations, and efficient application of limited resources."  This does not create a fact issue regarding the truth of the TWC's stated reason for promoting Quesnel.  In fact, it supports that Babiak believed Quesnel to be the better qualified candidate and the promotion decision was not based on race or national origin.

Martinez also relies on a statement made by Tony Robertson at a proceeding before the Commission on Human Rights held in 2009.  Defendant's Ex. 66.  That statement congratulated

Quesnel on her new position, praised her experience and said "the investigators respect her, which is key in our decision." This statement has no relation to Quesnel's hiring for the Manager position two years later, which is the basis for this suit. The Court finds this argument is insufficient to preclude summary judgment.

### 4.    Use of "Subjective" Interview Scores

Martinez next argues that Quesnel was selected as the best qualified candidate solely on the basis of an interview where the applicants were subjectively scored and this is evidence of discrimination that precludes summary judgment. Martinez's argument misses the mark. "It is inconceivable that Congress intended anti-discrimination statutes to deprive an employer of the ability to rely on important criteria in its employment decisions merely because those criteria are only capable of subjective evaluation." *Chapman v. AI Transport*, 229 F.3d 1012, 1034 (11th Cir. 2000).

Martinez contends that "it is inappropriate to decide as a matter of law that an employee is unqualified because he has failed to meet entirely subjective . . . criteria." Martinez cites to *Medina v. Ramsey Steel Co.*, 238 F.3d 674 (5th Cir. 2001) and *Lindsey v. Prive Corp.*, 987 F.2d 324 (5th Cir. 1993) in support. However, Neither *Medina* nor *Lindsey* precludes a grant of summary judgment in this case. Both opinions hold that it is improper to grant summary judgment at the prima facie case stage of the *McDonnell Douglas* analysis when an employment decision was based solely on subjective criteria. Here, the Court has already determined that a prima facie case of employment discrimination exists for purposes of summary judgment. Fifth Circuit cases have

16

routinely allowed subjective criteria to serve as "legitimate, nondiscriminatory" reasons for a hiring decision.[5]

In this case, each interviewee was asked identical questions and their answers were numerically scored based upon how closely those answers matched up to an answer key with the preferred answers. Quesnel's answers were closer to the correct or desired answers than Martinez's answers and were scored accordingly. Defendant's Exs. 44, 45, 47 and 48.   Thus it is questionable whether the TWC's process qualifies as "subjective." Even if the scoring process was "subjective," this explanation satisfies the TWC's burden. "The mere fact that an employer uses subjective criteria is not . . . sufficient evidence of pretext." *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 882 (5th Cir. 2003).

It is Martinez's burden to show that the interview process was in fact a pretext for discrimination, but the only evidence he offers to show the interview scores were awarded based on race or national origin is the fact that his scores were lower. This is insufficient to show pretext. *See Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 408 (5th Cir. 1999) (holding that a plaintiff may not survive summary judgment merely by disputing the defendant's assessment of his

---

[5] The Fifth Circuit has explained that "[a]n employer's subjective reason for not selecting a candidate, such as a subjective assessment of the candidate's performance in an interview, may serve as a legitimate, nondiscriminatory reason for the candidate's non-selection." *See Alvarado v. Tex. Rangers*, 492 F.3d 605, 616 (5th Cir. 2007).  But a subjective reason "will satisfy the employer's burden of production . . . only if the employer articulates a clear and reasonably specific basis for its subjective assessment." *Id.* In *Joseph v. City of Dallas*,  the subjective interview evaluations were found sufficient where a candidate for a police-officer position "provided poor answers to the hypothetical police scenarios and seemed unable to logically process information." 277 F. App'x 436, 441 (5th Cir. 2008); *Churchill v. Tex. Dep't of Criminal Justice*, No. 12–20691, 2013 WL 4406706, at *3 (5th Cir. Aug.19, 2013) (concluding that defendant met burden of production where successful candidate's interview answers were "more thorough and more specific to the questions that were asked, [and] demonstrably more professional and focused than [the plaintiff's] and certainly more original").

performance); *Wright v. W. Elec. Co.*, 664 F.2d 959, 965 (5th Cir. 1981) (holding that an unsuccessful applicant could not create a fact issue by personally disagreeing with an interviewer's assessment of his performance).  Martinez has failed to proffer sufficient evidence creating a genuine issue of material fact that the TWC's stated reason for not hiring him was a mere pretext for discrimination.

### 5.    TWC's Method of Scoring Guaranteed Quesnel the Highest Score

Martinez next argues that the TWC chose not to use interview methods that would have insured that the interviewers did not know whose responses they were scoring. Plaintiff's Response at p 11. Thus, because Quesnel received the highest score, Martinez argues that the scoring method was a pretext for national origin discrimination. To make out a discrimination claim, Martinez "must establish some nexus between the employment actions taken" and his national origin. *EEOC v. Tex. Instruments Inc.*, 100 F.3d 1173, 1182 (5th Cir. 1996).  This argument is simply another way of claiming that Martinez believes Quesnel was scored higher because she is white and he was given lower scores because he is Mexican-American.  This is insufficient to make out the required nexus. The argument rests on a "bald assertion" that such a nexus exists, and thus it "cannot survive summary judgment." *Id.* "[An] . . . employment discrimination  . . . plaintiff's subjective belief is an insufficient defense to a summary judgment motion. *See Kennerson v. Guidry*, 135 Fed.Appx. 639, 641 (5th Cir. 2005).

Martinez also argues that Babiak gave Quesnel the highest scores of any applicant on certain questions (questions 3, 4 and 13) when, he alleges, her answers did not closely track the preferred response. Defendant's Exs. 42, 43, 50, and 51. However, even assuming that Quesnel's responses did not closely track the preferred response, which is debatable, Babiak generally gave Martinez

18

higher scores on those questions than Covington gave Martinez or Quesnel, and when each candidate's scores by both interviewers were added together, the candidates' scores on those three questions were only one point apart.  In other words, those responses were not determinative of the outcome.  Setting those questions aside, Quesnel's overall interview score still would have been much higher than Martinez's score.  Martinez simply quibbles with the scores Babiak gave Quesnel, and this is not evidence of pretext.  *Manning,* 332 F.3d at 882.

### 6.       Use of Same Selection Process in 2011 and in 2009

Martinez alleges that the selection process used in 2009 was the same process used in 2011 for the Manager position and that both times the process was used to discriminate against him on the basis of his national origin.   The parties dispute whether the Court can even consider evidence of the 2009 hiring process because it occurred outside the actionable time period. Additionally, the TWC argues that the 2009 decision to promote Quesnel was made by different decisionmakers and thus is not relevant to the 2011 decision.  Defendant's Exs. 5 and 6.

A court may consider acts occurring outside the limitations period insofar as they are probative of a defendant's motivation.  *Galindo v. City of Roma Police Dept.*, 265 F.3d 1059 (5th Cir. 2001) (unpublished); *see also Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) ("Discriminatory incidents outside of the filing period may be relevant background information to current discriminatory acts.")   The 2009 promotion of Quesnel over Martinez is thus evidence the Court may consider.  Having said that, the 2009 promotion decision is irrelevant because the decisionmakers were different than those who made the allegedly discriminatory decision in 2011. "Anecdotal evidence of discrimination should only be admitted if 'the prior incidences of alleged discrimination can somehow be tied to the employment actions disputed in the case at hand." ' *Heno*

19

*v..Sprint/United Mgmt. Co.*, 208 F.3d 847, 856 (10th Cir. 2000).  A plaintiff can demonstrate this "by showing that the same supervisors were involved in prior discriminatory employment actions." *Id.*  Because in this case the decision not to promote Martinez in 2009 was made by entirely different individuals than the 2011 decision, the 2009 promotion is not the kind of substantial evidence required to carry the burden of persuasion to show pretext.  *Laxton v. Gap, Inc.*, 333 F.3d 572, 579 (5th Cir. 2004).

7.    **Miscellaneous Allegations**

Based on similar reasoning to that set out above, the Court declines to consider Martinez's general assertions that the TWC has discriminated against Hispanic employees "for years" and that it generally fails to carry out its duty to investigate discrimination by Texas employers. The claim that the TWC "generally" discriminates against Hispanics is supported only by the anecdotal evidence of one other employee, Patricia Herrera.  She did not apply for the position at issue here and evidence regarding her complaints against the TWC is irrelevant to this analysis.  Defendant's Ex. 8.  Additionally, the allegation about "no cause" findings is supported only by Martinez's own deposition testimony, Defendant's Ex. 3 at 272, and is is insufficient to overcome summary judgment.

**V.  CONCLUSION**

In summary, the Court finds that Martinez has failed to carry his burden sufficient to withstand the TWC's summary judgment motion.  He has failed to show either: 1) that he was "was 'clearly better qualified' than" Quesnel, *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 357 (5th Cir. 2001)(citations omitted);  or 2) that the reason given by the TWC for it's decision to

promote Quesnel and not Martinez is false and that discrimination was the real reason. The Court

finds that summary judgment is appropriate.

## VI.  RECOMMENDATION

The undersigned Magistrate Judge **RECOMMENDS** that the District Court **GRANT**

Defendant's Motion for Summary Judgment (Dkt. No. 69) and **DISMISS** Martinez's claims **WITH**

**PREJUDICE.**[6]

## VII.  WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing

objections must specifically identify those findings or recommendations to which objections are

being made.  The District Court need not consider frivolous, conclusive, or general objections. *See*

*Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations

contained in this Report within fourteen days after the party is served with a copy of the Report shall

bar that party from *de novo* review by the District Court of the proposed findings and

recommendations in the Report and, except upon grounds of plain error, shall bar the party from

appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the

---

[6]Also pending in this case are the TWC's Opposed Motion to Amend Answer (Dkt. No. 77), in which the TWC argues that it should be allowed to add an affirmative defense of after acquired evidence because it learned in discovery that Martinez lied on his job application for the Manager position and misrepresented that he resigned a prior job when he was actually terminated.  If the District Court adopts this recommendation, the addition of this affirmative defense will be unnecessary.  Similarly, Robert Notzen's Opposed Motion to Withdraw as Attorney (Dkt. No. 82) will also be moot if the recommendation is accepted.  Thus, if the recommendations herein are adopted, the magistrate Judge **FURTHER RECOMMENDS** that these two motions be **DISMISSED AS MOOT**.

District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 10th day of March, 2014.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE